IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CALEB W. HUMPHREY, <br><br> Movant, <br><br> vs. <br><br> DEPARTMENT OF DEFENSE, <br><br> Respondent. | MISC. NO. 18-00369 DKW-KJM <br><br> **ORDER DENYING MOTION TO QUASH SUBPOENA** |

## INTRODUCTION

Movant Caleb W. Humphrey seeks to quash a subpoena issued by the Department of Defense Office of Inspector General ("OIG") to Facebook, Inc., seeking non-content records for a Facebook account purportedly belonging to Humphrey. Because the subpoena is within the OIG's authority to issue and satisfies procedural requirements, and because the information sought is relevant and material to an investigation, the Motion to Quash is DENIED.

## BACKGROUND

On July 18, 2017, the Air Force Office of Special Investigations ("AFOSI") initiated an investigation of Humphrey and his wife for violations of the Uniform

Code of Military Justice (UCMJ) and the United States Code, relating to the death of their infant son and injuries to their infant daughter. Declaration of Special Agent Roberto A. Flores-Rendon ("Flores Decl.") ¶ 2. The investigation was initiated after doctors treating Humphrey's daughter in July 2017 alerted child welfare services that their examination revealed indications of possible abuse. *Id.* ¶¶ 4-10. The subsequent inquiry led the chief medical examiner to re-examine the cause of death of Humphrey's son in 2016 and to conclude that the manner of death was homicide. *Id.* ¶10.

During the course of the investigation, AFOSI interviewed two of Humphrey's co-workers who described communications they had with Humphrey via Facebook Messenger in the time period leading up to the death of Humphrey's son and the injuries to his daughter. *Id.* ¶¶12-13. On August 13, 2018, AFOSI served Facebook with a subpoena issued by the OIG for subscriber information related to a Facebook account purportedly belonging to Humphrey. *Id.* ¶¶ 17-18.

On September 7, 2018, Humphrey filed a Motion, based on the Fourth Amendment, to quash the subpoena issued by the OIG to Facebook. Dkt No. 1. The Government filed its Opposition to the Motion on September 24, 2018. Dkt No. 8. That Opposition includes the sworn declaration of AFOSI Special Agent Roberto A. Flores-Rendon. Humphrey did not reply. *See* Dkt No. 4 (setting a September 28, 2018, deadline to reply).

# STANDARD OF REVIEW

Under the Stored Communications Act, 18 U.S.C.A. §§ 2701 *et seq*. ("SCA"), providers of electronic communications services must disclose stored customer information to the Government under certain circumstances. Under Section 2703(c)(2), a subpoena is sufficient to require the provider to disclose basic, non-content, subscriber information, including, names, addresses, local and long distance telephone connection records, length of service, subscriber number or identity, and means of payment. The SCA does not require the Government to notify the customer whose records are being sought and does not create a mechanism for customers to challenge an administrative subpoena issued to a service provider for non-content communications. *See* 18 U.S.C. § 2703(c)(3); *Sams v. Yahoo!, Inc.,* 2011 WL 1884633 (N.D.Cal. May 18, 2011), *aff'd,* 713 F.3d 1175 (9th Cir. 2013) (noting that notice is not required where Government seeks non-content information from an internet service provider).

The Ninth Circuit standard of judicial scrutiny in an agency subpoena enforcement proceeding relies on a three-part test: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements of the subpoena have been followed; and (3) whether the information sought is relevant and material to an investigation. *Brock v. Local 375, Plumbers Int'l Union of Am., AFL-CIO,* 860 F.2d 346, 349 (9th Cir. 1988) (citations omitted). An affidavit from a

Government official is sufficient to make a prima facie showing that these requirements have been met. *F.D.I.C. v. Garner,* 126 F.3d 1138, 1143 (9th Cir. 1997). Finally, "[i]f the agency establishes these factors, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *Id.* (citing *EEOC v. Children's Hospital Medical Center,* 719 F.2d 1426, 1428 (9th Cir.1983) (en banc) (overruled on other grounds).

## **DISCUSSION**

Customers of third-party service providers do not have a reasonable expectation of privacy in their non-content subscriber information. The court's review of an administrative subpoena for such subscriber information is limited to a narrow reasonableness analysis under the Fourth Amendment. Here, the subpoena satisfies the reasonableness test, resulting in the denial of Movant's challenge.

I. *Minimal Scrutiny Is Employed Where An Administrative Subpoena Only Seeks Non-Content Information*

There is no provision in the SCA allowing a customer whose *non-content records* are being sought to challenge disclosure of that information. Non-content disclosures are governed by 18 U.S.C. § 2703(c), which does not even require notice to the customer, much less specify a process for challenging a subpoena. 18 U.S.C § 2703(c)(3); *Doe v. U.S. S.E.C.*, 2011 WL 5600513, at *3 (N.D. Cal. Nov. 17,

2011).  By contrast, where the *content* of communications is sought from an electronic services provider, Section 2704(b)(1) provides— under a subsection entitled "Customer Challenge"—that a customer has fourteen days to file a motion to quash.[1]  *Id.*

Here, Humphrey erroneously states that the Government seeks "information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence […]."  Motion at 2.  As reflected in the subpoena, attached as Exhibit A to both the Motion and the Government's opposition, the OIG only seeks records narrowly limited to non-content "subscriber data" within the meaning of the SCA.  Motion App. A.  Further, the Government explicitly states in its Opposition that the OIG subpoena only intends to access basic subscriber information.  Opp. 11.  Given the narrow scope of the OIG's subpoena, Humphrey cannot avail himself of the mechanisms provided in Section 2704(b)(1), nor does Humphrey cite any law that would allow him to base a challenge to the subpoena on Section 2703(c).  In short, as a threshold matter, there is no statutory basis for Humphrey to bring this challenge to the OIG's subpoena to Facebook.

---

[1] Humphrey filed a separate motion to quash another OIG subpoena under 12 U.S.C § 3410(b), the Right to Financial Privacy Act (RFPA). *Beyer v. Department of Defense*, Misc. No., 18-0034JMS-KJM (D. Haw. September 14, 2018), Dkt No. 12.  The RFPA provides an explicit mechanism for customers to challenge a subpoena issued to financial institutions for the customer's financial information.

Humphrey's challenge to the subpoena relies primarily on an argument that it violates his Fourth Amendment rights because it permits "generalized search of electronic data that is private, sensitive and protected by the fourth amendment." Motion at 1. As discussed above, notwithstanding Humphrey's erroneous characterization of the subpoena, the information requested by the Government is limited to basic subscriber information. Courts have routinely rejected the argument that subscribers have a Fourth Amendment privacy interest in this type of account information. *Doe v. U.S. S.E.C.,* 2011 WL 4593181, at *4 (citing *United States v. Li,* 2008 U.S. Dist. LEXIS 22283, *15 (N.D.Cal. Mar. 20, 2008) (ECPA[2] draws an important distinction between content and non-content information; subscribers have no reasonable expectation of privacy in IP addressing information); *Oregon v. Delp,* 178 P.3d 259, 264–65 (Ore.App.2008) (no error to deny motion to suppress evidence obtained as result of FBI subpoena to service provider seeking name and address of suspect in criminal investigation); and *State v. Offerman,* 188 P.3d 831 (Ct. App. 2008), *as corrected* (Aug. 8, 2008) ("Federal courts, which have examined this issue in the context of information obtained pursuant to the ECPA, have uniformly held that a subscriber does not have a

---

[2]The Electronic Communications Privacy Act (ECPA), which includes the SCA.

reasonable expectation of privacy in the subscriber information he or she provides to an internet service provider").

Humphrey fails to provide any alternative basis for claiming Constitutional protections of the information sought in the subpoena. Nor does he cite any law supporting his proposition that review of a subpoena for such information "requires an application of scrupulous exactitude." Motion at 2. Indeed, courts in both civil and criminal contexts routinely order disclosure of *basic subscriber information* over various constitutional objections. *Doe v. U.S. S.E.C.,* 2011 WL 4593181, at *4 (citing *In re s 2703(d),* 787 F. Supp. 2d 430 (E.D. Va. 2011))( routine compelled disclosure of non-content information that customer voluntarily provided to service provider does not form basis for First Amendment claim); *London v. Does 1-4*, 279 F. App'x 513 (9th Cir. 2008) (affirming denial of motion to quash civil subpoena to internet service provider that revealed owner of email accounts because "exposure of some identifying data does not violate the First Amendment"); *First Time Videos, LLC v. Does 1-500,* 276 F.R.D. 241, 244 (N.D. Ill. 2011) (analyzing motion to quash Rule 45 subpoena seeking discovery of addressing information of subscribers in copyright suit). There is simply no basis to employ a heightened standard of scrutiny to the subpoena in this case.

## II. The AFOSI Subpoena Satisfies All that Reasonableness Requires

The Fourth Amendment restrictions with respect to administrative subpoenas are limited and demand only that such subpoenas be reasonable. *United States v. Golden Valley Elec. Ass'n,* 689 F.3d 1108, 1115 (9th Cir. 2012) (citing *Reich v. Montana Sulphur & Chem. Co.,* 32 F.3d 440, 443 (9th Cir. 1994) and *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)). To be reasonable under the Fourth Amendment, an administrative subpoena must (1) be issued for a congressionally authorized purpose, (2) be relevant to the authorized purpose, (3) adequately describe the information sought, and (4) follow proper procedures relating to its issuance. *Hell's Angels Motorcycle Corp. v. County of Monterey,* 89 F.Supp.2d 1144, 1149 (N.D.Cal. 2000), *aff'd sub nom.*, *Hell's Angels Motorcycle Corp. v. McKinley*, 360 F.3d 930 (9th Cir. 2004)(subpoena issued under 21 U.S.C. §876)(citing *United States v. Sturm, Ruger Co.*, 84 F.3d 1 (1st Cir. 1996)).

Humphrey does not contend that the OIG was without authority to issue the subpoena or that the subpoena fails to comply with the requirements of an administrative subpoena.[3] Rather, Humphrey contends that the information sought is not relevant to the investigation regarding his alleged negligent child

---

[3] Nonetheless, the Government's Opposition sets out that the OIG has the authority to issue administrative subpoenas and that the AFOSI was within its Congressional mandate to investigate the kind of conduct allegedly engaged in by Humphrey.

8

endangerment or to his alleged contribution to his daughter's injuries or to his son's death. Motion at 2. The standard for establishing relevance in the context of an administrative subpoena is minimal: courts must enforce administrative subpoenas unless "the evidence sought by the subpoena [is] 'plainly incompetent or irrelevant' to 'any lawful purpose' of the agency." *E.E.O.C. v. Karuk Tribe Hous. Auth.,* 260 F.3d 1071, 1076 (9th Cir. 2001) (citing, *Fed. Mar. Comm'n v. Port of Seattle,* 521 F.2d 431, 433 (9th Cir.1975)).

Here, the Government has more than sufficiently demonstrated the relevance of the subpoena to the investigation. The OIG's subpoena to Facebook requests basic subscriber information limited to between May 2016 and July 2017 for the Facebook account purportedly belonging to Humphrey. In the Declaration submitted as part of the Government's Opposition, Special Agent Flores- Rendon specifies the links between Humphrey's Facebook account and AFOSI's investigation into the death of Humphrey's son and the injuries to his daughter. As the Ninth Circuit held in *Garner*, a Government affidavit is sufficient to establish a prima facie showing of relevance. 126 F.3d 1138.

AFOSI's interviews of James Magness and Keith Oliver revealed that Humphrey had used Facebook messenger to communicate with both individuals regarding the well-being of his children. Flores Decl. ¶¶12-13. During AFOSI's interview with Oliver, Oliver stated that Humphrey informed Oliver of Humphrey's

son's death via Facebook messenger. *Id.* Humphrey's son died in May 2016. Opp. 6. In his interview with AFOSI, Magness stated that, in approximately July 2017, Humphrey sent Magness a video of Humphrey's daughter via Facebook messenger in which his daughter's leg was twitching, and Magness told Humphrey to take her to a doctor. Flores Decl. ¶¶12-13. Magness also told investigators that on the day of the daughter's hospitalization in July 2017, Humphrey contacted Magness via Facebook Messenger to tell him about the circumstances surrounding her hospitalization. *Id.* The information contained in the Special Agent's Declaration is sufficient to establish both that Humphrey used Facebook messenger and that, on at least three occasions between May 2016 and July 2017—the time period covered by the subpoena— Humphrey used Facebook messenger to discuss the health of his children. As the Declaration states, the Facebook records sought will "confirm or refute that TSgt Humphrey owned/operated the Facebook account that communicated with Magness and Oliver." Flores Decl. ¶ 19.

Given the nature of AFOSI's investigation into Humphrey's role in the care of his children, information regarding those Facebook exchanges "touches on a matter material to the investigation." *Doe v. U.S. S.E.C.*, 2011 WL 5600513, at *3 (N.D. Cal. Nov. 17, 2011) (citing *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982)). Special Agent Flores-Rendon's declaration easily satisfies the low threshold for

relevance and reasonableness employed when evaluating the propriety of an administrative subpoena.

## **CONCLUSION**

For the foregoing reasons, the Motion to Quash the Subpoena to Facebook is DENIED.

IT IS SO ORDERED.

Dated: October 16, 2018 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Humphrey v. Department of Defense,* MISC. NO. 18-00369 DKW-KJM; **ORDER DENYING MOTION TO QUASH SUBPOENA**